TEXARKANA WATER COMPANY *v.* STATE.

Opinion delivered March 21, 1896.

TAXATION—SUFFICIENCY OF DESCRIPTION.—A description of land on the tax books as "west part S. W. S. W. sec. 20, T. 15, range 28, 30 acres, valuation, $30,000," belonging to the Texarkana Water Co., was insufficient to describe 30 acres belonging to said company, valued at $30,000, not lying in the shape of a parallelogram, and part of it lying outside of the west part of the southwest quarter the southwest quarter mentioned.

TAX TITLE—PURCHASE BY OWNER.—The state's lien on land for taxes cannot be defeated by the owner permitting it to be sold to the state for taxes at a void tax sale, and then purchasing it from the state as land forfeited for taxes.

SALE OF FORFEITED LANDS—TOWN LOTS.—An unplatted tract of land consisting of thirty-one acres, situated within the limits of a city, is a "lot," within Mansf. Dig., sec. 4245, authorizing the sale of lots in towns and cities, forfeited for non-payment of taxes, for the taxes, penalties and costs charged against them.

TAX SALE—PENALTY AND COSTS.—The statutory penalty and costs of sale cannot be charged against land sold for taxes where the sale is void for want of a sufficient description in the assessment of the land.

TAXES—INTEREST.—Taxes are not "debts," within the ordinary meaning of the word, and draw no interest other than the penalty fixed by the statute.

Appeal from Miller Circuit Court in Chancery.

RUFUS D. HEARN, Judge.

STATEMENT BY THE COURT.

The Texarkana Water Company was the owner of a tract of land containing thirty acres lying within the

corporate limits of the town of Texarkana, Ark. A correct description of the lands is as follows, to-wit: Beginning at the southwest corner of section twenty, township fifteen, range twenty-eight west; thence with the west line of said section, 1,320 feet to the north line of S. W. ¼ of S. W. ¼ of said section; thence east, with said north line, 1,110 feet; thence south 825 feet, more or less, to the west line of right-of-way of the St. Louis, Iron Mountain & Southern Railway; thence southwest, with said railroad right-of-way, 670 feet, more or less, to the south line of said section; thence west 660 feet to place of beginning,—containing 31 acres, excepting and reserving a lot of ground 160x175 feet deeded by H. M. Beidler to Polhanner et al., and a lot 40x140 feet conveyed by Beidler to Chiswell Cochran. Upon said land was located the engine house of the company, and other improvements and fixtures with which to operate the waterworks of the company. The land was valued and assessed for taxation for the year 1890 at the sum of thirty thousand dollars. The taxes levied upon the property for 1890 due and payable in the year 1891,—state, county, municipal and school,— amounted in the aggregate to six hundred dollars. The company failed to pay these taxes, and it was sold to the state for taxes. In addition to the taxes, the penalty and costs of the tax sale amounted to one hundred and fifty dollars. The land was not redeemed, and, after the expiration of two years from the date of the forfeiture, the clerk of Miller county, in which the land lay, certified the land to the state land commissioner as unredeemed land. The Texarkana Water Company did not pay taxes on said land for either of the years 1890, 1891 or 1892; but, after the time for redemption had expired, said company purchased said land from the state land commissioner at the price of a dollar and a quarter per acre, amounting in all to $37.50.

This suit was brought by the attorney general in the name of the state, under secs. 6724 and 6732 of Sand. & H. Dig., to collect the taxes which he alleged were due and unpaid upon said land for the years 1890, 1891 and 1892. It was alleged that the taxes (state, county, municipal, and school) due on said land for said years amounted, with penalty and costs of sale, to $1950.60; that the sale to the state was void by reason of insufficient description of the land in the proceedings upon which the sale of the land to the state was based; and that the defendant acquired no title by the purchase from the state land commissioner. The complaint prayed that the taxes be declared a lien on the land, and the same ordered sold for the satisfaction thereof. The answer of the defendant denied the material allegations of the complaint; admits that it purchased the west part of S. W. ¼ of S. W. ¼ of said section 20 from the State of Arkansas, the same being 30 acres in area, and paid $37.50, for the same, and received a deed conveying to it all the right, title and interest of plaintiff thereto, and alleging that plaintiff had never tendered or paid back the amount named, and was estopped to maintain this suit against said 30 acres, and further alleging that the land purchased from the state is not the "same identical land" purchased by the defendant from Beidler, and described in the complaint.

The cause was heard upon the complaint and answer and exhibits thereto, the depositions of witnesses, together with the following records put in evidence, to-wit: "The judgment of the Miller circuit court rendered on appeal by defendant from the board of equalization for Miller county, fixing by said judgment the valuation of the property in question for taxation to be $30,000 for the year 1889; the assessment of the land, as shown by the assessor's book of Miller county for the year 1890, to be $30,000; that part of the tax books showing exten-

sion of said land on tax books for the year 1890; the record of delinquent tax sales for the year 1890;" and certain other records and admissions of parties.

The president of the defendant company, whose deposition was read on the hearing, testified that neither the company, nor any one else, had paid the taxes on the land described in the complaint for the years 1890, 1891 and 1892. When asked why the taxes were not paid, he answered: "For the reason that the assessment was exorbitant, and the description of the real estate incorrect."

There was a finding and decree in favor of plaintiff, from which decree an appeal was taken.

*Scott & Jones*, for appellant.

1. This suit was brought under Sand. & H. Dig., sec. 6724. Such a suit was not embraced under this section, and the demurrer should have been sustained.

2. Taxes are not *debts* against the owner, to be recovered by suit. The remedy is against the land, in the manner prescribed by statute. Cooley on Taxation, p. 113; 2 N. W. 873; 7 Wall. 71; 6 Mass. 40; 26 Vt. 486; 26 N. J. Law, 398.

3. The description was not void for uncertainty. 14 So. 437; 51 N. W. 167. In this case, if the sale was valid, when the sheriff bid in the land for the state for the taxes, penalty and costs, and when afterwards the land was not redeemed, and was certified to the land commissioner, then the taxes became merged in the land. The state purchased the land for the taxes. Sand. & H. Dig., secs. 4565, 4560, 6557, 6589, 6607, 6627, 6633. The state cannot take title to the land, and also claim the taxes were a debt due from the former owner.

4. But if the sale was invalid by reason of irregularity in the assessment, still the defendant, by the

state's deed, became subrogated to all the right, title and interest of the state to the land.  41 Ark. 149.

5.  The consideration paid to the state was never repaid or tendered back to defendant.  No attempt was made to place the parties "*in statu quo.*"  36 N. Y. 196; 71 *id.* 549; 18 Pac. 723; 18 *id.* 727; 52 Ark. 150; 14 Otto, 636; 47 Ark. 191; 61 Mo. 565; 51 Ark. 294; 31 *id.* 364; 4 So. 868.

*L. A. Byrne* and *E. B. Kinsworthy*, Attorney General, for appellee.

1.  No taxes were paid for the years 1890, 1891, and 1892, and the land was subject to taxation.  It is admitted that the state has no action of debt, as taxes are not such a claim as will support such an action at common law.  The remedy is statutory, and until the act of April 9, 1891, the proceedings were summary; but by this act the chancery court was given jurisdiction to enforce payment of taxes of corporations by ordinary suits.  Sand. & H. Dig., secs 6724 and 6737.

2.  The tax deed, by reason of the description, is void on its face; consequently the state acquired no title.  50 Ark. 484; 56 *id.* 172; 59 *id.* 549.  And appellant acquired nothing by the deed of the land commissioner.  Furthermore, the conduct of appellant was a deliberate and premeditated fraud, and the lower court so found.  The state cannot be estopped by these dishonest acts.  Bigelow on Estoppel, (4 Ed.) p. 563.

5.  The contention that the $37.50 was not refunded is simply a play upon words.  The state did not seek to annul the commissioner's deed, for that was a nullity.  But the $37.50 was credited on the amount of taxes due.

Sufficiency of description of land on tax books.

RIDDICK, J., (after stating the facts.)  We agree with counsel for appellee that the sale of the land in controversy to the state for nonpayment of taxes was

void, because of an insufficient description thereof in the tax proceedings upon which the sale was based. The land was described upon the tax books as follows: "Texarkana Water Co., west part S. W. S. W. sec. 20, T. 15, range 28, 30 acres; valuation, $30,000." The valuation and acreage of the land described is the same as that of the land owned by the Texarkana Water Company, and the intention, no doubt, was to describe the land of such company. But the land owned by the water company was not in the shape of a parallelogram; and, if we could construe the description to mean a tract of land in the shape of a parallelogram taken off of the west side of the forty-acre tract of which it is said to be a part, it would take only a portion of the land of the water company, and include land of others upon which taxes have been paid. If the land of the company lay in the shape of such a parallelogram, the description might be sufficient; but, as it does not, the case on this point is controlled by the case of *Schattler* v. *Cassinelli*, 56 Ark. 177. The circumstances in this case, as in that, show that there was no intention to sell a tract of land in shape of a parallelogram.

If we treat the description in the tax proceeding as meaning a tract of thirty acres belonging to the company in the west part of the S. W. of S. W. of said section 20, the description is still incorrect, for all of appellant's tract of land does not lie in the west part of said S. W. of S. W. of sec. 20. A portion of it lies in the east half of said forty-acre tract. For these reasons, the description was insufficient to identify the land, and the state acquired no title by virtue of the tax sale. *Schattler* v. *Cassinelli*, 56 Ark. 175; *Hershey* v. *Thompson*, 50 Ark. 484; *Cooper* v. *Lee*, 59 *id.* 460; *Tatum* v. *Croom*, 60 Ark. 489; *Olsen* v. *Bagley*, 37 Pac. Rep. 739.

The tax sale to the state being void, it follows that the lien held by the state upon the land for taxes was

Effect of purchase of land at tax sale by owner.

not in any way affected by this void sale. Did the appellant secure a release of the taxes by the subsequent purchase of the land from the state? It is a rule of law, well established, that one cannot acquire title by a purchase of his own land at a tax sale. To permit him to do so would enable him to take advantage of, and reap a benefit from, his own neglect of legal duty. He should pay the taxes. If he neglects to do so, and his lands are offered at public sale for the payment of such taxes, he can gain no advantage by becoming a bidder at such sale. The money that he pays for the land is simply treated as a payment upon the taxes that he should have paid before the sale. *Jacks* v. *Dyer*, 31 Ark. 334; *Guynn* v. *McCauley*, 32 *id.* 97; *Pleasants* v. *Scott*, 21 *id.* 370; *Oswald* v. *Wolf*, 129 Ill. 200; Black on Tax Titles (2d Ed.), secs. 273 and 274. It seems that the reason of the rule extends to this case. It was the duty of appellant company to pay the taxes upon its land. It failed to do so, and the land was sold to the state in payment of the taxes. This sale was void. The state gained nothing by it, and the lien for taxes still remained upon the land. It would be against public policy to allow appellant to defeat this lien, which existed to the extent of nearly two thousand dollars, by a payment of $37.50 to the state land commissioner in purchase of his land. The state had no title, but only a lien for taxes; and neither the state land commissioner nor any other officer of the state had power to release appellants from such lien for less than the full amount of the taxes due upon the land. Appellant cannot be allowed to avoid the payment of taxes due on its land by permitting such land to sell at a tax sale that it knows is void, and afterwards purchasing the same from the state land commissioner.

This would be true even if it be conceded that this land came within the statute authorizing the commissioner to sell lands forfeited to the state for the non-payment of taxes at one dollar and a quarter per acre. But that provision has reference to lands other than lots in towns and cities. Lots in towns and cities that have been forfeited to the state for non-payment of taxes are subject to sale for the taxes, penalty and costs charged against said lots. Sec. 4245, Mansf. Dig.* The act of Feb. 24th, 1885, directed the commissioner of state lands to sell at public sale any town lots forfeited to the state prior to that act; but it does not change the above section as to lots in cities of the first class, nor as to town lots forfeited to the state subsequent to the date of that act. The land of appellant lies within the corporate limits of the city of Texarkana, and is a city lot, within the meaning of the section above referred to; the word "lot" in that section including any parcel or piece of land lying in a town or city.

For this reason, even had the tax sale been valid, the appellant could not hold the land under its purchase from the commissioner of state lands, and refuse to pay the taxes, penalty and costs charged against it, for the commissioner had no authority to sell the land for less than the taxes, penalty, and costs. His action in that regard was without authority of law, and was caused, no doubt, by a mistake as to the location of the lands.

We conclude that the state is in no way estopped from enforcing her lien for taxes against the land in question.

In addition to the taxes, the court, in its decree, charged against the land of appellant the penalty and costs of the tax sale and interest upon the taxes from the time the same was due. As the description of the

---

* This section seems to have been omitted from Sand. & H. Digest.

land extended upon the tax books was insufficient, the land should not be charged with this penalty. Appellant is not to blame for failing to pay taxes upon land which was not correctly described upon the books of the tax collector. Neither was it the fault of the appellant that the tax sale was void, and the costs of this void sale should not be charged against the land. Taxes are not "debts," within the ordinary meaning of the term, and bear no interest other than the penalty fixed by the statute; and this penalty cannot attach when the description of the land is insufficient to identify it. *Shaw* v. *Peckett*, 26 Vt. 482; *Cave* v. *Houston*, 65 Tex. 619; Cooley on Taxation, (2 Ed.) 17; Black on Tax Titles, sec. 151.

*Interest not recoverable.*

To the extent of the penalty, interest and costs charged against the land of appellant, the decree must be modified; in other respects, it is affirmed. The cause is remanded, with an order that the decree be modified and entered in accordance with this opinion.

Bunn, C. J. dissents.