CENTRAL STATES LIFE INSURANCE COMPANY *v.* STATE.

4-3768

Opinion delivered March 18, 1935.

*Mann & Mann* and *A. D. DuLaney,* for appellant.

*Walter L. Pope,* Attorney General, *Harry J. Lemley* and *DuVal L. Purkins,* for appellee.

HUMPHREYS, J. This suit was brought in the chancery court of Pulaski County by the State of Arkansas against appellant, a foreign life insurance company, doing business in Arkansas, under act No. 235 of 1931, amending § 9968 of Crawford & Moses' Digest for a privilege tax of 2½ per cent. on the gross premium receipts for the years 1931, 1932 and 1933 paid said appel-

lant on life insurance policies originally issued by Home Life Insurance Company, a domestic corporation, and assumed by appellant under a contract termed "Reinsurance Agreement," entered into between appellant and said Home Life Insurance Company, under date April 3, 1931, and approved on April 6, 1931, by the Insurance Commissioner of the State of Arkansas. The amount sued for and recovered was $25,964.54 and interest thereon to date of decree in the sum of $2,384.78, or a total amount of $28,349.32.

There is no denial in the answer filed to the complaint of the amount of the premiums collected on said policies for the years 1931, 1932 and 1933, but it denied that it was liable to the State of Arkansas for 2½ per cent. thereon under said act and the "reinsurance agreement" for the following reasons:

First, that the act is void because it did not receive a two-thirds majority vote of both houses of the General Assembly, as required by § 31, article 5, of the Constitution of the State.

Second, that the act is void because it violates the Fourteenth Amendment to the Constitution of the United States in fixing a premium tax on foreign life, health and accident insurance companies at 2½ per cent. when existing laws fix a premium of 2 per cent. on all other foreign insurance companies; and

Third, that the "reinsurance agreement" set out by exhibit and made a part of the answer was an assignment to it of all the assets of the Home Insurance Company, a domestic corporation, for purposes of administration and liquidation for the benefit of the creditors of the Home Insurance Company.

Said act 235 does not violate article 5, § 31, of the State Constitution, because it failed to receive a two-thirds majority vote of both houses of the General Assembly. Eighty per cent. of the proceeds derived under the act goes to the general revenue fund, which is used to defray the expenses of the executive, legislative and judicial departments of the State. The other twenty per cent. is set aside by the act for the promotion of the public health. The constitutional provision it is claimed the act

violates is as follows: "No State tax shall be allowed, or appropriation of money made, except to raise means for the payment of the just debts of the State, for defraying the necessary expenses of government, to sustain common schools, to repel invasion and suppress insurrection, except by a majority of two-thirds of both houses of the General Assembly."

It is argued that the act should have received a two-thirds majority vote of both houses of the General Assembly because it set out twenty per cent. or one-fifth of the fund for the promotion of the public health, which is not a necessary expense of the government. One of the highest duties a government owes its citizens is to protect their health, from which it follows that money raised and expended for the promotion of the public health is a necessary expense of any well-regulated government. It was said in the case of *Holden* v. *Hardy,* 169 U. S. 366, 18 S. Ct. 383, that: "It is as much for the interest of the State that the public health should be preserved as that life should be made secure."

To the same effect is the text in 29 C. J. 242. Under the rule thus announced, the act is valid although passed by only a majority of the votes of both houses of the General Assembly.

Act 235 does not violate or offend § 1 of the Fourteenth Amendment of the Constitution of the United States because it imposes a privilege tax of 2½ per cent. on the gross receipts of foreign life, health and accident insurance companies when existing laws fix a privilege tax on all other foreign insurance corporations at two per cent. It will be observed by reference to the act that it makes no discrimination between insurance companies of the same class, the class being life, health and accident companies.

It was said in the case of Ex parte *Byles,* 93 Ark. 612, 126 S. W. 94, that: "Unless the classification be clearly unreasonable and arbitrary, and without just distinction as a foundation, the Legislature being primarily the judges of that, it is the duty of the courts to respect and uphold the legislative determination."

It was said in the case of *Davies* v. *Hot Springs*, 141 Ark. 521, 217 S. W. 769, that, "The only restriction which the law imposes on the exercise of the power is that there shall not be a discrimination between persons in like situations and pursuing the same class of occupation."

The following authorities are to the effect that the selection of life, health and accident insurance companies in one class and imposing a tax of 2½ per cent. on their gross receipts for the privilege of doing business in this State is not violative of § 1 of the Fourteenth Amendment to the Constitution of the United States, and that such classification is not capricious or arbitrary. *Commonwealth of Pennsylvania* v. *Girard Life Ins. Co.*, 305 Pa. 558, 158 Atl. 262, 38 A. L. R. 460. (Affirmed by Supreme Court of United States, 287 U. S. 570, 53 S. Ct. 94)'; *Mass. Bonding & Ins. Co.* v. *Chorn*, 274 Mo. 15, 201 S. W. 1122. In the case of *Dulaney* v. *Continental Insurance Co.*, 185 Ark. 517, 47 S. W. (2d) 1082, our court had this particular act under review and upheld the retroactive features in the act, thereby impliedly upholding the constitutionality of the act as a whole.

The contract in question is very long, and it would unnecessarily extend this opinion to set it out in full. It is denominated a "reinsurance agreement," meaning that appellant, a foreign life insurance corporation, assumed the risks of the Home Life Insurance Company, a domestic life insurance company, and became the successor to all of its contracts. Learned counsel for appellee have briefly and succinctly stated what, in their opinion, is the essence of the agreement in the following language:

"Central States (appellant), for the consideration of the sale and transfer to it of all the assets of Home Life (subject to an agreement to apply a part of the earnings from the reinsured business to the impaired reserve in the policies reinsured, and subject also to a conditional and limited agreement to divide such earnings with Home Life stockholders, and subject also to a further agreement that certain other liabilities of Home Life, payment of which was not directly assumed by Central States Life, are to be paid out of the proceeds of

the assets conveyed), agrees absolutely to reinsure and assume all of the outstanding policies of Home Life, (subject to certain subsequent exceptions and limitations) conditional upon the insured paying the premium on the policies to Central States Life.''

After a careful reading of the instrument, we think the substance of the main elements of same are correctly set forth in the statement. We adopt it as our statement of the substance of the contract. Our interpretation is that the status of appellant is fixed in the contract as that of a purchaser of all of the assets of the Home Life Insurance Company for a valuable consideration, and not that of a liquidating agent for the assets thereof. None of the conditions, modifications, exceptions or limitations appearing in the contract convert it from a contract of purchase and sale of the assets into an assignment. The contract in question is quite similar to the contract in the case of *Barham* v. *Crittenden County Bank,* 170 Ark. 77, 278 S. W. 636, in which we held the contract was, in effect, an absolute sale. Under this interpretation of the contract, the status of appellant is that of a foreign life insurance company doing business in Arkansas under a ''reinsurance agreement'' with reference to the subject-matter, which made it responsible to the State of Arkansas for the occupation tax imposed by said act for the years 1931, 1932 and 1933.

Appellant argues that in no event should it be required to pay interest on the amounts collected and withheld annually because, it says, no penalty for failure to pay is imposed by said act. This would be the rule where the taxes required to be paid are a lien on property and no personal liability on the part of the property owner for same exists. This court said in the case of *Texarkana Water Co.* v. *State,* 62 Ark. 188, 35 S. W. 788, where it was sought to fix a lien for failure to pay taxes on real estate that ''taxes are not debts within the ordinary meaning of the word, and draw no interest other than the penalties fixed by the statute.'' It is true that the act fixes no penalty for failure to pay the privilege tax, but this is not a suit to impose a lien on the property for the collection of taxes thereon. It is a suit to collect the

State's own money which appellant collected from policy-holders. Two and one-half per centum of the amount collected belonged to the State as an occupation tax for the privilege to appellant to do business in the State of Arkansas. Certainly it cannot be said that appellant may wrongfully withhold money had and received for the State without paying interest on it for the time it wrongfully withholds it.

No error appearing, the decree is affirmed.

SMITH, J., not participating.