UNITED MUTUAL LIFE INSURANCE COMPANY OF INDIANAPOLIS *v.* STATE, EX REL. ATTORNEY GENERAL.

4-4712

Opinion delivered June 28, 1937.

372

House, Moses & Holmes and H. B. Solmson, Jr., for appellant.

Jack Holt, Attorney General, Leffel Gentry, Assistant, and Paul X. Williams, for appellee.

GRIFFIN SMITH, C. J. Appellant declined to pay a tax of 2½ per cent. on certain gross premium receipts from 1931 to 1935, inclusive, for which the chancery court gave judgment in the sum of $5,566.30, with a direction that interest on such amount at six per cent. per annum should be computed and collected from December 1, 1936, to date of payment.

The state's claim is based upon § 9968 of Crawford & Moses' Digest, as amended by act 235 of 1935. Act 235 requires every life insurance company doing business in Arkansas to file with the insurance commissioner, at the time of making its annual report, a statement of gross premium receipts, upon which a tax of 2½ per cent. is payable on or before March of each year.

Appellant's defense is that the laws of Arkansas exempt from the tax in question all fraternal beneficiary orders or societies, and such exemption may be claimed in answer to the state's suit, for the reason that the gross premium receipts which the State is undertaking to tax arose from payments made by members of appellant's predecessor, the Supreme Lodge Knights of Pythias, a fraternal beneficiary society. Appellant admits that it is an old line legal reserve insurance company. The question to be determined, therefore, as stated in substance in appellee's brief, is this: Is a legal reserve mutual insurance company liable for taxes on premiums collected from policyholders in this state on business acquired from a fraternal beneficiary company when the fraternal beneficiary company is itself exempt from the payment of such taxes?

The issues were presented to the trial court on an agreed statement of facts, the essential parts of which follow:

"Defendant's predecessor, The Supreme Lodge Knights of Pythias, was a fraternal benefit society, organized in 1868 by an act of Congress and incorporated in the District of Columbia. Some years subsequent thereto this Association began the writing of fraternal life insurance. Said Association carried on fraternal activities in a number of states, and a number of years ago was admitted by the insurance commissioner of the state of Arkansas to operate in this state as a fraternal benefit society, under and within the contemplation of the fraternal benefit society statutes of this state. Said Supreme Lodge Knights of Pythias did so operate as a fraternal benefit society in the state of Arkansas and was yearly licensed to do business as a fraternal benefit society within the contemplation of the fraternal benefit statutes within this state. Said Association has an active lodge society, representative form of government, ritualistic form of work, operated without profit, and carried on only fraternal activities as contemplated by the statutes of this state.

"It is further stipulated and agreed that the same fraternalistic activities that were carried on by the members of the Supreme Lodge Knights of Pythias prior to reorganization in 1930, have also been carried on subsequent to that time, and are being carried on at the present time by that organization, among the membership that existed prior to said reorganization date.

"In the year 1930, the Congress of the United States passed an act authorizing fraternal and benefit corporations theretofore created by special acts of Congress to divide and separate the insurance activities from the fraternal activities by an act of its supreme legislative body, subject to the approval of the Superintendent of Insurance of the District of Columbia. In accordance with the provisions of this act, on August 18, 1930, the Supreme Lodge Knights of Pythias did separate its insurance activities from its fraternal activities, and the

374

United Mutual Life Insurance Company was organized as an old line legal reserve insurance company, and it has continued as such until the present time.

"On or about the first of April, 1931, the United Mutual Life Insurance Company made application for and received a license from the state of Arkansas to carry on an old line mutual legal reserve business, and has continued to transact such business since that time. At the same time this defendant, United Mutual Life Insurance Company, was licensed to carry on an old line life insurance business in the state of Arkansas, the Insurance Commissioner and Attorney General of the state of Arkansas, after conference and consideration of the reorganization and conversion into an old line mutual legal reserve company, informed defendant, United Mutual Life Insurance Company, that the business written in this state subsequent to reorganization date would be taxable as old line insurance business, but that the business written by the Supreme Lodge Knights of Pythias, same having been written as fraternal business, would not be taxable under the statutes of the state of Arkansas.

"By an act of Congress of 1932 the United Mutual Life Insurance Company was authorized to reincorporate under the laws of any state so permitting, and in accordance with an act of Indiana of 1933 the United Mutual Life Insurance Company reincorporated in that state and since then has been known as the United Mutual Life Insurance Company of Indianapolis, Indiana, which corporation assumed all the liabilities of every kind and description existing against the United Mutual Life Insurance Company at the time of its reincorporation under the laws of the state of Indiana."

The stipulations bring appellant's predecessor into this record as a fraternal beneficiary society belonging to a group or class which may claim exemption from payment of gross premium taxes. If The Supreme Lodge Knights of Pythias had continued to transact its business here, exercising the fraternal or beneficiary characteristics pertaining to it at the time the certificates

were issued, admittedly the gross premiums would not be taxable. But, acting under authority of Congress, appellant's predecessor separated its insurance, activities from its fraternal functions, and insurance activities were assumed by the United Mutual Insurance Company. In April, 1931, this corporation was authorized to do business in Arkansas as an old line company. In 1932 congress passed an act permitting reincorporation, and in 1933 appellant did reincorporate under the laws of Indiana.

From April, 1931, the United Mutual Life Insurance Company (and the same company as reorganized in 1933 under the laws of Indiana) have been doing business in Arkansas under permits issued by the insurance commissioner, in pursuance of an agreement made by such commissioner, and concurred in by the attorney general. This agreement was an opinion, expressed in writing, that taxes on gross premiums on policies of insurance written subsequent to 1930 would be taxable, but that premiums on certificates issued by The Supreme Lodge Knights of Pythias would be exempt—this on the theory that the fraternal, or lodge, or ritualistic features of the original contract, having once attached, were not altered by the fact that thereafter premium maturities would be payable to an old line company.

It is contended by appellant that the judgment should be reversed on authority of *Modern Woodmen of America* v. *State ex rel. Attorney General,* 193 Ark. 458, 103 S. W. (2d) 38. We do not think that decision is conclusive of the issues now before us. No contention was there made that the appellant had by any formal act of reorganization or reincorporation changed its characteristics from those of a fraternal beneficiary society to those of an old line insurance company. On the contrary, it was shown that for many years the appellant had operated under the guise of a fraternal agency through permits annually renewed by the insurance commissioner. It was also shown that a lodge system of government was being maintained and that fraternal activities were engaged in.

The state's argument was that these activities were negligible; that they were inconsequential in comparison with the extensive business done by the corporation, and that the fraternal or lodge formalities were maintained as a subterfuge, practiced to evade taxation, when the truth was that the appellant was engaged in writing insurance similar to that of old line companies. In short, the state insisted that, notwithstanding appellant's claimed attributes of fraternalism, and in spite of the fact that it was incorporated as a beneficiary society and had been admitted to do business as such in the state under laws enacted for the protection of societies and orders of the class to which appellant belonged, the legal aspect of such classification should be disregarded in favor of a common sense construction which the State claimed ought to be given. The opinion contains the following findings: "Here, not only were the articles of incorporation, the constitution and by-laws, and the several beneficiary certificates issued by appellant introduced in evidence, which reflect its status as a fraternal beneficiary society, conformably to the laws of this state, but testimony was introduced which, in our judgment, is conclusive of the fact that it is a fraternal beneficiary society within the meaning of our statutes, doing business as such under a certificate annually issued by the Insurance Commissioner."

It will be observed that the opinion carried an express finding that the corporation was doing a fraternal beneficiary insurance business, as distinguished from the kind of business done by insurance companies classified for taxation by our laws.

In the instant case it is admitted that appellant is an old line company of the class subject to taxation.

Determination of the rights of the parties, therefore, resolves itself into this proposition:

(a) Is there any law expressly providing that fraternal business assumed by a nonfraternal corporation is subject to taxation?

(b) If there is no express enactment, did the General Assembly, in directing taxation of a specific class

of business and exempting from taxation a different class, intend that characteristics of the activities engaged in should control.

(c) Did the lawmakers intend that the name applied to a corporation should fix its liability and exclude proof that some of its business originated from nontaxable sources?

Appellee does not point to any law expressly providing for the relief granted by the chancery court. Therefore, if the right to tax exists, it must be implied from legislative intent, or inferred from prior decisions of this court.

To this end appellees direct attention to *Central States Life Insurance Co.* v. *State*, 190 Ark. 605, 80 S. W. (2d) 628, where a judgment against the insurance company was affirmed. Appellant, a foreign corporation, entered into a reinsurance agreement with the Home Life Insurance Company, a domestic corporation. Under the laws of this state, domestic corporations are not required to pay the 2½ per cent. gross premium tax. In that respect they are comparable to fraternal beneficiary insurance companies. Under its reinsurance agreement, the Central States Company took over the business of the Home Company. It was urged that, inasmuch as the business assumed was not subject to taxation in the hands of the domestic corporation, it could not be taxed when taken over by appellant. The opinion in part says: "Our interpretation is that the status of appellant is fixed in the contract as that of a purchaser of all of the assets of the Home Life Insurance Company for a valuable consideration. * * * None of the conditions, modifications, exceptions or limitations appearing in the contract convert it from a contract of purchase and sale of the assets into an assignment. * * * Under this interpretation of the contract, the status of appellant is that of a foreign life insurance company doing business in Arkansas under a 'Reinsurance Agreement' with reference to the subject-matter, which made it responsible to the state of Arkansas for an occupation tax imposed by said act for the years 1931, 1932

and 1933." *Central States Life Insurance Company* v. *State,* 190 Ark. 605, 80 S. W. (2d) 628.

Appellee concludes, from the foregoing expressions, that the gross premium tax imposed upon foreign insurance companies is not a tax on the character of business done, but is an occupation tax or a tax imposed on the company for the privilege of doing business in the state, the amount to be determined by the gross receipts of the company from policyholders within the state.

Admitting the correctness of this construction, we are, nevertheless, of the opinion that the exemption provisions in favor of fraternal beneficiary societies were intended to inure to the individual members—that is, to certificate holders, as distinguished from the parent agency. On the other hand, the tax statute exempting domestic insurance was intended as a benefit to home corporations. Its purpose was to give encouragement to and thereby promote domestic development. Immunity of such corporation from the gross premium tax was not intended as an advantage to be claimed by the policyholders.

As mentioned *supra,* The Supreme Lodge Knights of Pythias was authorized by an act of Congress to separate its fraternal and its insurance activities. In reincorporating under the laws of Indiana, appellant is subject to the following Indiana statute: "In case such foreign insurance company shall have outstanding legal reserve insurance, and shall also have outstanding fraternal certificates of insurance issued by itself or predecessor, such corporation shall remain liable for the payment of such legal reserve policies and also shall remain liable for the payment of such fraternal certificates, in the same manner as before such reincorporation. * * * Such new corporation shall be clothed with all of the rights, powers, duties, responsibilities and liabilities of such fraternal certificates, and the same shall be and remain fraternal certificates, and shall be governed by all laws regulating fraternal insurance and such new corporation shall properly designate such fraternal insurance in its annual reports as fraternal insurance, and

such insurance shall be governed by the fraternal insurance laws of this state as if such new corporation were a fraternal association. Such fraternal laws, however, shall apply exclusively to such fraternal certificates, and upon the final payment of such certificates, such corporation shall have no rights, duties or responsibilities under such fraternal laws, the purpose being to authorize and permit any such company reincorporated under the provisions of this act faithfully to carry out all contracts of fraternal insurance which may be outstanding at the time of such reincorporation."

Cases are cited by appellant, sustaining or tending to sustain the point now being urged. *Central Railroad* v. *George*, 92 U. S. 665, 23 L. Ed. 757; *Jones* v. *Loaleen Mutual Ben. Assn.*, 337 Ill. 431, 169 N. E. 254; *York* v. *Cent. Illinois Relief Assn.*, 340 Ill. 595, 173 N. E. 80; *Cochrane, Insurance Commissioner of Colorado* v. *Bankers Life Company*, 30 Fed. (2d) 918; *Yeomen Mutual Life Ins. Co.* v. *Ray Murphy, Commissioner of Insurance of the State of Iowa* (inferior court, now on appeal); *Bankers Life Company* v. *Chorn, Insurance Superintendent*, 186 S. W. 681. These and other citations are mentioned in this opinion not because they are controlling, but merely because they are urged by appellant as sustaining the point of view contended for.

It is our opinion that the controversy is not one to be decided by what other courts have done in circumstances and in the light of facts varying materially from those here presented, the distinctions being so sharply drawn that a proper analysis would unnecessarily extend this opinion.

We have reached the conclusion that the tax ought not to be assessed for the following reasons:

(1) Because the State has declared its public policy to be that premiums paid on fraternal beneficiary insurance are not subject to the tax imposed on foreign corporations doing an old line insurance business.

(2) Because the business which it is now proposed to tax came from a nontaxable source. It was created by an agency which had a right to issue beneficiary cer-

tificates, and the premiums on these certificates could not, under our laws, be reached for taxation purposes while in the hands of appellant's predecessor, The Supreme Lodge Knights of Pythias.

(3) Because, when Congress authorized The Supreme Lodge Knights of Pythias to separate its business and to organize a division or separate agency charged with the duty of carrying out agreements with certificate-holders, appellant assumed the insurance obligation. That obligation was not impressed with the special tax it is now sought to impose.

(4) Because points urged by appellee to sustain the judgment were raised and decided contrary to appellee's contentions in *Modern Woodmen of America* v. *State,* 193 Ark. 458, 103 S. W. (2d) 38, in *The Maccabees* v. *State,* 103 S. W. (2d) 46, and in *Woman's Benefit Association* v. *State,* 103 S. W. (2d) 46. In the opinion in the Modern Woodmen case this expression appears: "Whether appellant may continue to operate as a fraternal beneficiary society in this state presents a question addressed to the General Assembly, and not to us."

We take judicial knowledge of the fact that when the opinion was published, the General Assembly was in session, and continued in session for several weeks. We also take judicial knowledge of the further fact that a bill seeking to correct the evil complained of was introduced in the General Assembly. The measure was not passed, and the policy of the state remained as it had been, exempting fraternal beneficiary societies from the tax in question.

(5) Because it would be gross discrimination to uphold the tax in the instant case, and to exempt from taxation those who were appellants in the former cases referred to *supra.*

The judgment is reversed, and the cause dismissed.