**LOCKHART et al. v. AMERICAN UNITED LIFE INS. CO.**

No. 9438.

Court of Civil Appeals of Texas. Austin.

June 14, 1944.

Rehearing Denied June 21, 1944.

Grover Sellers, Atty. Gen., and Fowler Roberts, Ardell Williams, and Ocie Speer, Asst. Attys. Gen., for appellants.

John M. Scott, of Fort Worth, and Ireland Graves, of Austin (Samuels, Brown, Herman, & Scott, of Fort Worth, and Black, Graves, & Stayton, of Austin, of counsel), for appellee.

Alfred M. Scott, of Austin, amicus curiæ.

McCLENDON, Chief Justice.

Suit brought under Art. 7057b, Vernon's Ann.Civ.St., to recover gross premium taxes demanded by the Board (State Board of Insurance Commissioners) under Art. 4769, V.A.C.S., and paid under protest. The plaintiff, American United Life Insurance Company, is chartered under the laws of Indiana, and is doing business in Texas under permit. It was originally chartered in 1930, under the name of United Mutual Life Insurance Company, and by charter amendment in 1936 changed its name to American United Life Insurance Company. As noted later in detail it is the legal successor of the Insurance Department of the Supreme Lodge Knights

of Pythias, a fraternal benefit society, and the taxes involved represent the amount based upon assessments collected from citizens of Texas during the years 1930–1942, inclusive, upon certificates issued by the Insurance Department to members of the Knights of Pythias. We shall refer to these several organizations respectively as American, Mutual, and Supreme Lodge. The defendants are the members of the Board and other State Officials, to whom we shall refer as the Officials. The case was tried to the court upon agreed stipulation; and the only issue it presents is whether the amount of these assessments constitutes "premiums * * * upon policies of insurance" within the meaning of Art. 4769. The judgment was in favor of American, and the Officials have appealed.

The pertinent facts are these: The Supreme Lodge Knights of Pythias was organized in 1864 as a voluntary unincorporated secret society. It was incorporated in 1870 under general laws of the District of Columbia as a fraternal and benevolent corporation. By charter amendment in 1882 it was permitted to write certain insurance benefits for its members, and to that end created the "endowment rank," under which name its beneficial activities were conducted. In 1894, 28 Stat. 96, it was reincorporated by special act of Congress with powers incidental to fraternal and benevolent organizations within the District of Columbia; the Act expressly providing that all rights and business of the antecedent corporation were vested in the reincorporated entity. During all this period the Supreme Lodge had no capital stock and conducted its affairs (beneficial, social and fraternal) in such a way as to constitute it a fraternal benefit society as defined in Ch. 8, Title 78, R.C.S., and in all other statutes of Texas relating to such fraternal benefit societies. From 1899 to August 30, 1930, it complied with all Texas laws and conducted a fraternal benefit insurance business in Texas under permit or license from the State. April 12, 1930, 46 Stat. 158, the Congress passed an Act authorizing fraternal and benevolent corporations created by special act "to divide and separate" their fraternal from their fraternal beneficial insurance acivities under separate corporate names and entities. The insurance corporation, so created, was to "continue" under the name chosen as a "mutual legal reserve life insurance corporation," with all the rights and powers of such corporations. It was expressly stipulated, however, that nothing contained therein or done thereunder should operate to impair the obligations of any contract. Under this Act Supreme Lodge separated its two activities, continuing those fraternal under its old name and those fraternal-beneficial under the name of United Mutual Life Insurance Company; the resolution of separation providing: "That nothing herein contained is intended nor shall be construed to change, modify, impair, alter or amend the provisions of certificates and contracts now outstanding, and such certificates and contracts shall remain in full force and effect subject only to the right of said United Mutual Life Insurance Company and such insured members or any of them mutually to agree upon such changes in said certificates and contracts as may from time to time seem expedient to the parties."

By Act of Congress of May 17, 1932, 47 Stat. 158, insurance corporations created by special act were authorized to reincorporate under the laws of any state; but providing that "said new corporation shall faithfully carry out any and every right, obligation, and liability of said original corporation."

In 1933, Acts 1933, c. 267, Indiana passed an act authorizing foreign life insurance corporations to reincorporate under its laws; the act having provisions similar to those of the 1932 Act of Congress to carry out all rights, duties, obligations, contracts and liabilities existing at the time of such reincorporation; and providing that nothing therein contained should impair the obligations of any existing contract. By appropriate action under this act the Mutual was in October 1933 reincorporated without change of name under the laws of Indiana. By charter amendment in 1936, the name of the Mutual was changed to American United Life Insurance Company.

Since the separation of its two activities in 1930 the Supreme Lodge has continued its fraternal activities under its old name and corporate entity in every way as theretofore and has continuously maintained its lodge system in Texas, complying in all respects with the pertinent Texas laws. All of the involved assessments were collected on certificates issued by Supreme Lodge to its members prior to the separation of its activities in 1930. These certificates are governed in every way by the

rules of the Supreme Lodge, and require continued membership therein to avoid forfeiture of all rights thereunder, except as to certain specified paid-up benefits. As to the nature of these assessments the stipulation states that they were "paid to plaintiff by persons who held membership in the Insurance Department of the Supreme Lodge Knights of Pythias pursuant to the constitution and by-laws" thereof; that membership in said Insurance Department "was evidenced by a certificate as described in the constitution and by-laws." The sums were so paid pursuant to designated provisions; were denominated by the Supreme Lodge as "assessments" and "the obligation of the members of the Insurance Department thereof was in all things created and controlled by the terms of" said constitution and by-laws. "At all times material to the question involved in this action the original certificate issued by the Supreme Lodge Knights of Pythias together with the constitution and by-laws constituted the sole contractual relation between the persons paying such sums of money to" American "who acted throughout as and for the Supreme Lodge Knights of Pythias with respect thereto." The Supreme Lodge "during all of the period of time during which the fraternal insurance certificates material to this suit were issued, was duly licensed under the laws of the State of Texas relating to the conducting of a fraternal insurance business. At all times material to this suit the Supreme Lodge Knights of Pythias was a fraternal benefit association or society within the Acts of Congress and laws of Texas relating to such societies."

Concerning the relation of American to the certificates the stipulation reads:

"American United Life Insurance Company has continued to conduct the insurance business which originated in the fraternal benefit certificates issued by the Supreme Lodge Knights of Pythias prior to August 18, 1930. American United Life Insurance Company did not issue a new certificate or policy to any of such persons in lieu of the original fraternal benefit certificate, nor did it modify or impair in any wise contractual rights created by said certificates. The certificates as issued remain and now are subject to the constitution and by-laws of the Supreme Lodge Knights of Pythias. The contractual rights of the certificate holders remain identical with the rights created by said certificate when issued by the Supreme Lodge Knights of Pythias.

"The fraternal certificates have continued in full force unchanged by various corporate transactions stipulated above. American United Life Insurance Company, maintains separate accounts with respect to the holders of fraternal insurance certificates from the accounting maintained by the company with its old line insurance policy holders. The company operates the fraternal business on a nonprofit basis, exactly as did the original Supreme Lodge. Every account involving income received from certificate holders, or payments to certificate holders or their beneficiaries is shown separately on the company's books of accounts, including assessments received, death benefits, surrender values and other payments made, certificate loans made and outstanding, and interest thereon."

The pertinent portions of Art. 4769 read: "Each life insurance company not organized under the laws of this State, transacting business in this State, shall annually, on or before the 1st day of March, make a report to the Commissioner, which report shall be sworn to by either the president or vice president and secretary or treasurer of such company, which shall show the gross amount of premiums collected during the year ending on December 31st, preceding, from citizens of this State upon policies of insurance. Each such company shall pay annually a tax equal to three and three-fourths ($3\text{-}\frac{3}{4}$) per cent of such gross premium receipts."

This Article is a part of Chapter 4 of Title 78, R.C.S., which Chapter deals generally with life insurance companies as distinguished from fraternal benefit societies. Art. 4779 (also a part of this Chapter) reads: "Nothing in this chapter shall be held to apply to fraternal benefit societies as defined by the laws of this State."

Chapter 8 of Title 78 (Arts. 4820–4859f, Vernon's Ann.Civ.St. arts. 4820–4859f) deals with fraternal benefit societies both foreign and domestic. They are therein defined, and certain duties and regulations in the conduct of their affairs are imposed upon them. Under the above stipulation it is not necessary to detail any of these definitions, duties or regulations. From the time of its passage in 1913 until 1936, Art. 4858 of Chapter 8 read: "Every fraternal benefit society organized or licensed under this chapter is hereby declared to be a charitable and benevolent

institution, and all of its funds and property shall be exempt from all and every State, county, district, municipal and school tax, other than taxes on real estate and office equipment, when same is used for other than lodge purposes."

In 1936 this Article was amended so as to impose upon foreign fraternal benefit societies doing business in Texas a tax measured by the "total amount of premiums or contributions made to the society for or on account of its policies or beneficial certificates * * * on the lives of citizens of this State." Acts 44th Leg., 3rd C.S., p. 2040, Ch. 495, Art. 4, § 5d. Before any action was required under this amendment it was in effect repealed by Ch. 14, § 1, p. 16, Acts 45th Leg. (1937), now Art. 4858a, V.A.C.S., which is an exact copy of Art. 4858 prior to the 1936 amendment, with the addition "including occupation taxes" inserted after the words "school taxes." The emergency clause of this Act reads: "The fact that fraternal benefit societies, under the general plan of their organization, perform duties and obligations at great expense to the members, fulfilling fraternal obligations of such societies; and the further fact that occupation and other taxes would create such a burden as would seriously impair the ability of such organizations to fulfill the full purpose of such societies, create an emergency" etc.

Other chapters of this Title deal with specific classes of life insurance not here involved.

The course of reasoning embodying the contentions of the Officials may be substantially stated as follows:

The tax imposed by Art. 4769 is, upon foreign life insurance companies as such doing business in Texas and the amount of the tax is measured by "gross premiums" on "policies of insurance" collected from citizens of Texas. Beneficial certificates of fraternal organizations are "policies of insurance" and assessments in connection therewith are "premiums." Articles 4779 and 4858 deal expressly only with fraternal benefit societies as organizations and not with the business generally of fraternal benefit insurance; and since these Articles are exemption statutes and must therefore be strictly construed, they cannot be held to apply to American (a life insurance company and not a fraternal benefit society) or to the business of fraternal insurance which it transacts in this state.

By giving the words used in Art. 4769 their broad general meaning in the abstract, and disregarding their textual association and relation to other articles, the argument might appear syllogistically sound. Our conclusion not to follow it rests upon considerations we now state.

■ It is of course true that fraternal benefit societies are in essence life insurance companies and the business they conduct is life insurance. In fact this is probably the oldest form of life insurance. See State v. Texas Mut. L. Ins. Co., Tex.Civ. App., 51 S.W.2d 405. In like manner the "beneficial certificates" they issue are "policies of insurance," and the "assessments" in connection therewith are "premiums," within the broad general meaning of those terms. See Daniel v. Life Ins. Co. of Va., Tex.Civ.App., 102 S.W.2d 256. It has been the uniform policy of this state, and of many if not all the others, to place fraternal benefit societies and the character of life insurance business they do in a class separate from that of other kinds of life insurance companies and business. They are dealt with in a separate chapter (8) of Title 78 wherein they are defined with particularity and subjected to stated regulations. With the exception of the above-noted short lived and never effective act of 1936, no premium tax has ever been imposed upon them or their life insurance business by this state. The Supreme Lodge is and at all pertinent times has been a fraternal benefit society within the prescribed definition of our laws and has always complied with their requirements. The certificates here involved were issued by it to its members (who are still its members) prior to the act of separation of its social from its fraternal-beneficial activities. These certificates are still subject to its constitution and by-laws, and no change has been wrought whatever in the contractual rights and obligations of the respective parties thereto. Had there been no separation of activities under no possible theory could the tax be held to apply to the Supreme Lodge. The separation concededly did not change in any way the character of the fraternal-benefit business as represented by these certificates, but only placed the handling or conduct of that business in a separate corporation created for that purpose and endowed with

all powers and charged with all the responsibilities of the parent corporation with regard to that business. It was to all intents and purposes and in every essential respect an agency and the alter ego of the Supreme Lodge as regards its fraternal-beneficial activities. It did not itself conduct the social or lodge activities; but they were conducted by the Supreme Lodge, and continuous membership therein was held by the certificate holders as required under the certificates. In so far as concerns the business represented by these certificates, we hold the American falls within the classification of fraternal benefit societies within the intent and meaning of Art. 4779. The life insurance business on the one hand and that of fraternal benefit insurance on the other, are separate and distinct businesses under our statutory treatment. The tax imposed by Art. 4769 is for conducting the former in Texas. No tax is imposed for conducting the latter. The American is conducting both classes, and therefore falls within the classification of both classes of organization (company). As to its old line or level premium business it is an insurance company and its "premiums" and "policies" are such within the meaning of Art. 4769. As to the business of handling the certificates involved it is a fraternal benefit society within the meaning of Art. 4779, and the certificates and assessments thereon are not policies of insurance or premiums within the meaning of Art. 4769.

■■■ The same result is reached by giving the expressions "premiums" and "policies of insurance" their evident meaning as deduced from their context, the relation of Art. 4769 to other articles, and the uniform policy of the state. It is manifest that the expression "life insurance company" was not intended to apply to fraternal benefit societies. Art. 4779 expressly so provides. The exclusion of the latter from the "life insurance companies" designated in Art. 4769, by necessary implication excludes the character of business they, and they alone do or are authorized to do, that is the issuing of beneficial "certificate" and collecting "assessments" thereon. Since Chapter 4 of Title 78 deals only with a class of life insurance companies restricted so as to expressly exclude fraternal benefit societies, the words employed in Art. 4769 must be given a meaning which accords with this restriction. So construed "premiums" excludes "assessments" and "policies" excludes "certificates."

This construction accords with the uniform policy of the state; and places these certificate holders upon the same basis as certificate holders in other fraternal benefit societies. And since the tax of necessity ultimately falls upon the certificate holders, it obviates a discrimination between these and those holding certificates in other fraternal benefit societies,—a discrimination manifestly opposed to any legislative intent.

The Supreme Court of Arkansas, in a unanimous decision (opinion by the Chief Justice) reached the same conclusions in United Mut. Life Ins. Co. v. State, 194 Ark. 371, 108 S.W.2d 484. The statutes there involved were in essence the same as ours, and the case was tried upon the same stipulations as here. The same contentions were made and the same conclusions reached there as here.

The Arkansas decision was followed by the Supreme Court of Iowa in Yeomen Mut. Life Ins. Co. v. Murphy, 223 Iowa 1315, 275 N.W. 127. The opinion quotes with approval extensively from the Arkansas opinion.

The Supreme Court of Wisconsin in Lutheran Mut. Life Ins. Co. v. State, 242 Wis. 598, 9 N.W.2d 82, 87, declined to follow the Iowa decision, saying: "We are not obliged to give our license and tax statutes the same construction that Iowa gives to its statutes. The Iowa statutes are different from ours."

It is not important that these differences be pointed out here. It should be noted, however, that no reference is made in the Wisconsin opinion to the Arkansas case. The significance of this omission we think lies in the fact that the Iowa and Wisconsin cases dealt with corporations which had converted to level premium companies under Iowa statutes which (to quote from the Iowa case) "made no provision that it was necessary to have a representative form of government or a lodge system, but specifically provided that nothing in the reorganization would change existing contracts and that the new organization must assume all of the obligations of the old contracts." [223 Iowa 1315, 275 N. W. 129.] Our conversion statute, passed in 1929, carries similar provisos. Art. 4859e, §§ 8 and 9, V.A.C.S.

The difference (evidently regarded as essential by the Wisconsin court) seems to lie in the fact that the certificates involved in the Arkansas case (as here) were still subject to the laws of the Supreme Lodge, and required continuous membership in the fraternal order, which order continued to maintain its lodge system in Arkansas.

It would serve no useful purpose to attempt a critical analysis of these decisions. They are, of course, not binding in this jurisdiction; however persuasive they may be as representing the views of eminent judges on questions before them for adjudication. The Arkansas case is on all fours with that at bar; the reasoning therein appeals to us as sound, and the conclusions reached accord with our own.

■ If there were any substantial doubt regarding the proper construction of Art. 4769 as regards the issue before us, that doubt should be resolved in favor of the uniform departmental construction for a period of nearly ten years. The facts in that regard, as set forth in the stipulation are these:

In 1933 the question whether a similar liability to that in litigation here existed against the Yeomen Mutual was considered and determined by the Board and its conclusion embodied in a letter to the Yeomen stating: " * * * after further consideration we have concluded that as far as the assessment income from the Fraternal business of the Yeomen Mutual Life Insurance Company is concerned the same is not subject to taxation under Article 4769 Texas Revised Civil Statutes."

Reports were filed with the Insurance Department by Supreme Lodge covering the years 1913–1930, no tax being demanded during those years. Reports for the Mutual and American were filed covering the years 1931–1941, which showed in separate columns the collections of "Ordinary Premiums" and "Fraternal Assessments"; and the tax for each of those years was paid based upon the amount of ordinary premiums alone, no demand being made to include the fraternal assessments. The first claim ever made by the department that assessments should be included was in 1941.

It is contended by the Officials that the above-quoted letter was not the act of the Board, it being signed only by the auditor. The stipulation removes any doubt upon that score wherein it states that: "After consideration the Board of Insurance Commissioners addressed the following letter to the Yeomen Mutual Life Insurance Company." Furthermore the method of assessing and collecting these taxes shows a uniform departmental construction. The reports were filed by the company, were audited by department officials, and the amount of the tax certified by the Board to the State Treasurer. Departmental construction up to 1941 was clearly shown.

The rule that where a statute is of doubtful meaning departmental construction may be resorted to in arriving at its proper interpretation is one of long standing. See State v. Texas M. L. Ins. Co., Tex.Civ. App., 51 S.W.2d 405. This rule is of especial force when applied to revenue measures; for, as said in Franklin F. I. Co. v. Hall, 112 Tex. 332, 247 S.W. 822, 823: "The acquiescence of the Legislature in the departmental construction has not been merely a passive one, for the reason that the fees authorized by the act are a source of revenue, the consideration of which is one of the primary duties of the Legislature." See also Clark v. Atlantic Pipe Line Co., Tex.Civ.App., 134 S.W.2d 322, error refused; Flowers v. Pan American, Tex.Civ.App., 154 S.W.2d 982, error refused; Crane v. Mann, 162 S.W.2d 117 error refused; Flowers v. Texas Mexican R. Co., Tex.Civ.App., 174 S.W.2d 70; 39 Tex.Jur. pp. 234–238, §§ 125, 126.

The American urges that if the Officials' construction of Art. 4769 be adopted, it is violative of the equal protection and due process clauses of the Federal Constitution, Amend. 14 and of Sec. 2 of Art. 8 of the Texas constitution, Vernon's Ann. St. Our above holdings render unnecessary consideration of these questions.

The trial court's judgment is affirmed.

Affirmed.

BLAIR, J., did not sit in this case.