Franklin Fire Insurance Company v. Ed. Hall, Commissioner of Insurance and Banking.

No. 3765. Decided January 24, 1923.

(247 S. W., 822.)

1.—Fees of Office—Insurance Agent—Certificate.

The certificate of authority which an agent of an insurance company is required to obtain from the Commissioner of Insurance (Rev. Stats., art. 4968) is a license for doing business. It is not a certificate of "any fact or facts

contained in the papers, documents, or records," of that office, which he is authorized to give (Rev. Stats., art. 3833) and for issuing which he is authorized by article 3834, Revised Statutes, to charge a fee of 50 cents, as "for each certificate not otherwise provided for."  (pp. 334-336).

**2.—Statutory Construction—Departmental Practice.**

The practice of a department of the State Government affecting its revenue and pursued with apparent legislative acquiescence, is considered as bearing on the construction of the statutes under which such practice was pursued.  (p. 336).

**3.—Insurance Agent—Occupation Tax.**

There is no charge or occupation tax on pursuing the occupation of an insurance agent in this State since the repeal of the law of 1895 by that of 1907.  (pp. 336-339).

Original application to the Supreme Court by an insurance company and its agents for writ of mandamus requiring Hall, the Commissioner of Insurance and Banking, to issue to such agents a certificate of their right to do business as such.

*Thompson, Knight, Baker & Harris,* for relators.

*W. A. Keeling, Attorney-General,* and *Tom L. Beauchamp,* Assistant, for respondent.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This is an original proceeding for mandamus filed by the Franklin Fire Insurance Company, a corporation organized under the laws of the State of Pennsylvania, with a permit to transact business in this State, and by John L. Wortham, B. F. Carruth and Gus S. Wortham, composing the partnership of John L. Wortham & Sons, against Ed. Hall, Commissioner of Insurance and Banking, to require him to issue to the relators, John L. Wortham, B. F. Carruth and Gus S. Wortham, a certificate of authority as local agents of the Franklin Fire Insurance Company.

The first named relator is now, and for a number of years has been engaged in the business of insuring owners of property against loss by fire and other hazards.  The individual relators are engaged in conducting a local insurance agency in the City of Houston, and are agents for the Franklin Fire Insurance Company.  They have been engaged in the local insurance business for a number of years, under certificates of authority heretofore issued from time to time by the Commissioner of Insurance and Banking.

It appears that the Commissioner of Insurance has declined to issue certificates of authority to the individual relators named, for the reason that they have not paid or tendered to him 50¢, which he claims to be due for the issuance of each certificate of authority to transact or conduct the business of a local insurance agent.

Article 4960, Revised Statutes, provides:

"It shall not be lawful for any person to act within this state, as agent or otherwise, in soliciting or receiving applications for insurance of any kind whatever, or in any manner to aid in the transaction of the business of any insurance company incorporated in this state or out of it, without first procuring a certificate of authority from the commissioner of agriculture, insurance, statistics and history (commissioner of insurance and banking)."

The certificate required by this Article is the one here involved. The only question before us for determination is whether or not the charge exacted by respondent is authorized by law. He predicates his right to make the charge on Revised Statutes Article 3834, one subdivision of which authorizes the Commissioner of Insurance and Banking, as well as other State officers, to make a charge of 50¢ "for each certificate not otherwise provided for".

The insistence of respondent is that the fifty cents demanded by him is in no sense a tax, but is a charge for the ministerial act of his department in furnishing the certificate. We can not agree with this contention. The certificate issued by the Commissioner is a license, and the fee due therefor, if any, is a license fee, and not a mere charge for service.

By an Act approved July 9, 1879, the Legislature defined who should constitute insurance agents in the State, and required them to have a certificate of authority, under certain penalties against them and their companies, before they were allowed to transact the business of an insurance agent in the State. This Act, however, did not require a license or a certificate of the agent himself, but a copy of the certificate issued to his company. 9 Gammel's Laws, p. 64. This Act became Article 4961 Revised Statutes, and defines those to whom Article 4960 is applicable. The last named Article was part of a law which, when originally enacted, was applicable only to life and health insurance companies, but by incorporation in the general provisions relating to insurance in the Revised Statutes of 1879, apparently, was made to apply to all insurance companies. These Articles are in substantially the same form as when originally passed by the Legislature. Rev. Stats., 1879, Art. 2943; 9 Gammel's Laws, p. 64; State v. Burgess, 101 Texas, 524, 529, 109 S. W., 922; Rev. Stats., 1911, Arts. 4960, 4961.

Articles 4963, 4964, 4965, and 4966, enacted in 1903, and Articles 4969 and 4971, which became the law in 1909, all relate to the subject of insurance agents, and refer to the certificate of authority required by Article 4960, designating and treating it as a *license*.

These statutes plainly show that the certificate of authority required by Article 4960 is the agent's *"license"*. Considering all the statutes together, and having in mind the State's general purpose to regulate and control the insurance business, it is plain that Article

4960 is a *license* statute, and that the certificate of authority there referred to is the *license* of a local insurance agent, when granted to such an agent. This statute confers upon those authorized the special privilege of being local insurance agents, a right not common to all, but denied to all except upon compliance with the law. It is within the usually accepted definition of a license statute. 17 R. C. L., pp. 474, 503; 14 R.. C. L., p. 858, § 27; Hoefling and Son v. City of San Antonio, 85 Texas, 228, 231, 16 L. R. A., 608, 20 S. W., 85.

Article 3834 was a Section of an Act passed in 1848. Articles 3833, 3835 and 3836 represent the remaining Sections of the original measure. 3 Gammel's Laws, p. 184.

The original Act has remained the law since its passage without material change, except modifications from time to time so as to make it applicable to other officers than those originally named, among which is the Commissioner of Insurance and Banking.

Article 3833 makes it the duty of the various State officers named, including the Commissioner of Insurance and Banking, "to furnish any person who may apply for the same with a copy of any paper, document or record in their respective offices, and also to give certificates, attested by the seals of their respective offices, certifying to any fact or facts contained in the papers, documents or records of their offices, to any person applying for the same."

Article 3834 declares it lawful "for the officers named in the preceding Article to demand and receive the following fees for the services mentioned therein, except as otherwise specially provided in this chapter:" The fees named in the Article are 15 cents for each one hundred words for copies of any paper, document or record in their offices in the English language, including seal and certificate. The next fee specified is a fee of 25 cents for the same character of document if in any other language than the English language; while the third has reference to translated copies. The fourth charge authorized is for plats or maps on file in any State office, the amount not being specified, but left to be ascertained by the department head on the basis of the labor required. The last designated fee is the one in controversy here. It reads: "For each certificate not otherwise provided for, 50 cents."

Reading the language as written, and giving it the plain meaning of the words used, the fees fixed by Article 3834 apply only to those things authorized by Article 3833, which are: (1) "a copy of any paper, document or record" in the office to which application is made; and, (2) "to give certificates, attested by the seals of the respective offices, certifying to any fact of facts contained in the papers, documents or records of their offices."

It is to be observed that the declaratory portion of Article 3834 authorizes the collection of the fees "for the services mentioned" in

Article 3833. In other words, Article 3833 specifies the subject matter to which the named fees of Article 3834 apply. It is plain, then, we think, that by the language "for each certificate not otherwise provided for, 50 cents," is meant that this charge is to be made when the department head certifies to "any fact or facts contained in the papers, documents or records of his office," and that it has no reference to certificates of authority issued to local insurance agents authorizing them to transact that class of business.

The license ·or certificate of authority required of insurance agents is not a certificate of "any fact or facts contained in the papers, documents or records" of the office of the Commissioner. It is an official license, necessary to the conduct of an insurance business, issued upon compliance with the statutes, and is subject to revocation for violations of the law. Revised Statutes, Articles 4963 to 4971. The certificate required by Article 4960 being a license, the fee charged therefor is necessarily a license fee or tax, and, unless clearly authorized by law, can not be charged. The doubt, if any arises, must be resolved against the right to make the exaction. City of Austin v. Nalle, 85 Texas, 520, 541, 22 S. W., 668, 960; 21 Am. and Eng. Ency. Law, p. 809.

The contention of the respondent in this case is not supported by departmental practice nor legislative construction. On the contrary, the charge made in this instance has never heretofore been exacted of local insurance agents. The Insurance Department has never heretofore demanded this charge from local insurance agents. The Legislature has acquiesced in this construction, in that it has not passed any Act making this charge applicable as it is sought to be applied in this instance. The acquiescence of the Legislature in the departmental construction has not been merely a passive one, for the reason that the fees authorized by the Act are a source of revenue, the consideration of which is one of the primary duties of the Legislature.

So construing the plain language of the Act, and interpreting it in the light of departmental practice and legislative construction, it is clear that this charge has no application to certificates of authority issued to local insurance agents.

Neither in the original agency Act nor afterwards, was· any license fee ever specifically provided for local insurance agents, although by subsequent general occupation tax laws such a license fee was exacted for many years, until repealed in 1907. This leads to a consideration of the history of our occupation tax laws as related to the business of insurance.

By an Act passed in 1875, fire insurance companies and each of their agents were required to have a certificate of authority issued the company, for which a charge of $1.00 was authorized; but this

was not an agent's license such as in controversy here. This Act and the subsequent ones of 1876 and 1907 were the basis of Rev. Stats., Art. 3844. 8 Gammel's Laws, pp. 403, 1055, 1059; Acts of 1907, pp. 127, 130. The history of this Article shows the charge of $1.00 for the certificate therein referred to does not apply to the local agents' certificate required by Article 4960.

We agree with the statement made by the respondent in his brief, that, "The Act of 1875 prescribing the fee of $1.00 for certificates of authority when demanded by such companies, associations, persons or agents as may apply therefor, refers only to certificates showing the authority of the company to do business in Texas." However, from 1876 to 1893 various Acts of the Legislature levied occupation taxes, both State and County, on insurance companies. These taxes were designated by the statutes relating to them as *"license"* taxes or fees, and the receipts issued as *"occupation licenses."* 8 Gammel's Laws, pp. 1078, 1081, 1443, 1446, 1448, 1449; 9 Gammel's Laws, pp. 145, 149, 278, 281, 1052, 1055.

By an Act approved May, 1893, the Legislature enacted the gross receipts tax law, applicable to fire insurance companies as well as to other classes of corporations, which provided that "no occupation tax shall be levied on any insurance companies by any county, city or town." 10 Gammel's Laws, p. 586. The effect of this Act was to annul the provisions contained in the existing occupation tax laws levying an occupation tax on insurance companies, both as to the State and County tax. In 1895 the Legislature imposed an occupation tax upon "each and every person or firm acting as general agent or agents of life, fire, marine and accident companies, etc., in the sum of $50 annually." It defined what was meant by a general agent. Section 2 of the Act imposed an occupation tax of $7 on local insurance agents, defining what was meant by the latter term. Local agents were required to pay an annual occupation tax of $7 "in each and every county in which they do business." The emergency clause of this Act recited: "Whereas, *there is now no occupation tax upon* general and local agents for life, fire, marine, industrial and accident insurance companies in this State, therefore," etc. 10 Gammel's Laws, p. 810.

The occupation tax laws were amended by an Act approved in June, 1897. In this amended law the occupation tax against insurance companies was omitted, and the tax against general and local insurance agents embraced in the law last above discussed was placed in the general occupation tax Act,—except that the requirement that a local agent must pay his occupation tax in each county was omitted, and he was required to pay it only once. 10 Gammel's Laws, pp. 1489, 1493; Eichlitz v. State, 39 Texas Crim., 486, 46 S. W., 643.

Thus far it is undeniable that up to the date of the last enactments named there had not been levied against local insurance agents any occupation tax except that required by the Act passed in 1895, and incorporated in the amendment of 1897. Not only have we failed to find any in the statutes up to these dates, but the emergency clause of the Act of 1895 recites specifically that there was then no occupation tax on insurance agents. This statement was made notwithstanding the fact that Article 3834, under which the exaction is claimed in this case, was then in existence, and had been for forty-seven years previous thereto.

So far as local insurance agents were concerned, the status as stated continued until 1907. By an Act approved March 21, 1907, the occupation taxes required of local insurance agents were abolished by a general measure repealing various provisions of the occupation tax law. Acts of the 30th Legislature, pp. 57, 58. (13 Gammel's Laws). However, the occupation tax levied on general insurance agents was not repealed, but was retained, and still appears in the Revised Statutes as Section 20 of Article 7355.

By an Act approved May 16, 1907, the Legislature provided for the levy and collection of occupation taxes in the form of gross receipts upon various classes of corporations, among which were insurance companies. This law, in Section 8, declared that the gross receipts should constitute all taxes and license fees collected under the laws of the State against insurance companies, and that no occupation or other tax should be levied on or collected from any insurance company by any county, city or town. It then provided, "that this shall not relieve agents from paying an occupation tax." Acts 1907, p. 484, 13 Gammel.

The insistence is here made that the last phrase is to be construed as recognizing the existence of an occupation tax on local insurance agents, and that the 50 cents provision of Article 3834 is the charge referred to and so recognized. This position is untenable.

Under the law as it existed when this Act became effective, which was ninety days from May 16, 1907, both general and local insurance agents were required to pay occupation taxes. The Act repealing the occupation tax law as to local agents did not become effective until January 1, 1908. Between the two dates named, the proviso referred to operated on both classes of agents, and since the repeal of the local agents tax has continued applicable to general agents.

The proviso, therefore, did not refer to Article 3834, under which the license fee is claimed by respondent.

Prior to the Act of 1895, imposing a license fee or occupation tax on local insurance agents, there was no law or authority for collecting such fee from them, although at that time, and since 1879, they were required to have certificates of authority. The Act of 1895,

imposing such a tax, continued to be the law, as heretofore stated, until 1907, when it was repealed. When the repealing Act became effective January 1, 1908, the law, in so far as any tax or charge against local insurance agents for licenses was concerned, remained precisely as it was before the enactment of the original measure in 1895. There was no fee charge or occupation tax prior to the law of 1895, and there was none after the repeal of that law in 1907.

It is clear, not only from the actual wording of Article 3834, but from the history of the entire subject of licenses, occupation taxes and fees chargeable against local insurance agents, that this Article of the statute has no application to certificates of authority or licenses issued under Article 4960, Revised Statutes.

The mandamus will issue.