SCOTT, Com'r of Insurance, v. T. V. SMELKER & CO. et al.  (No. 6937.)*

(Court of Civil Appeals of Texas. Austin. Jan. 6, 1926. Rehearing Denied Jan. 27, 1926.)

1. **Insurance ⊜⇒22—Transaction held within prohibition against licensed companies causing to be issued policy on Texas property except through resident licensed agent.**

Transaction, by which nonresident agent presents, at home office of foreign insurance company licensed to do business in Texas, application for insurance on property in Texas, and it agrees to write it, if approved by licensed Texas agent, and pay him a commission based on the premium, and it is approved, and policy issued, and such commission paid, *held* a violation of Rev. St. 1911, art. 4963, prohibiting company so licensed from causing to be issued policy on Texas property except through licensed Texas agent.

2. **Insurance ⊜⇒22—Transaction held indirect violation of statute against resident licensed agent paying commission to nonresident.**

Transaction, whereby foreign licensed company violates Rev. St. 1911, art. 4963, prohibiting it from causing to be issued policy on Texas property except through licensed Texas agent,

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 17, 1926.

*held* also to amount to indirect payment of commission by licensed Texas agent to nonresident agent, prohibited by article 4965; the licensed agent being given on such policies a smaller commission than usual.

**3. Insurance ⬀22 — Under statute, licensed Texas agent to have all compensation included in term "commission."**

Under Rev. St. 1911, arts. 4963, 4965, it is intended that licensed Texas insurance agents shall receive for their services in matter of issuing and delivering or causing to be issued and delivered any policy on property in Texas, all compensation paid, and that may be included in the term "commissions," used in the statute, in the same sense that it is used in commercial law —citing Words and Phrases, First Series, "Commission."

**4. Insurance ⬀20—License of foreign company to do business in Texas revocable for violation of unconstitutional statute.**

License of foreign insurance company to do business in Texas may be revoked for violation of statute, though statute be unconstitutional.

Appeal from District Court, Travis County; Cooper Sansom, Judge.

Suit by T. V. Smelker & Co. and others against John M. Scott, Commissioner of Insurance. From a judgment granting an injunction, defendant appeals. Reversed and rendered.

Dan Moody, Atty. Gen., and R. B. Cousins, Jr., Asst. Atty. Gen., for appellant.

Thompson, Knight, Baker & Harris and William Thompson, all of Dallas, for appellees.

### Statement.

BLAIR, J. The appeal is from an injunction restraining the commissioner of insurance of Texas from enforcing his order addressed to all licensed insurance companies, from which we quote the following:

"That all or no part of any commission in consideration or on account of any policy or policies covering property * * * within the state of Texas is to be paid any nonresident agent or broker either directly or indirectly; that the practice engaged in by some companies of having a resident licensed agent in Texas, pro forma to countersign a policy for which he receives a part of the commission, the balance being paid to a nonresident agent or broker, is in violation of the law and must not be continued.

"The license of any company, organization, association, or agent violating this order will be revoked or not renewed. This order sustained by the Revised Statutes, arts. 4963, 4965, and 4966; Penal Code, art. 642; Opinions Attorney General, August 2, 1916, May 17, 1911, and November 21, 1916."

The injunction was obtained by seven licensed Texas insurance agents, joined in by five licensed foreign insurance corporations, upon the ground that the statutes under which the commissioner claimed to act do not authorize it, and that to construe them as authorizing it would render them void as violative of the Constitutions of state and nation, and particularly of the Fourteenth Amendment.

### Findings of Fact.

The transactions at which the order was directed relate to insurance policies covering property situated in Texas but owned by residents of other states. The application is made generally at the home office of one or the other appellee companies through their respective nonresident agents, and occasionally through nonresident independent brokers. The company to which the application is made agrees that it will accept it and write the insurance if it meets with the approval of its licensed Texas agent, with the further agreement that, if a policy is issued, the nonresident agents or brokers presenting the business will be paid a commission based upon a percentage of the premiums. The company presents the matter to its Texas agent, stating that it is offered the business and is willing to accept it, if the agent approves and will sign or countersign and deliver or cause to be delivered the policy, and do such other things as are necessary to carrying the risk, and for which services the company agrees to pay a commission based upon a percentage of the premium. When a policy is issued and delivered under this arrangement the company pays both its resident and nonresident agents or brokers the commissions it agreed to pay out of the same premium. The commission thus paid the Texas agent is much smaller than on a policy arising wholly within the state and with reference to which he performs all services of an agent necessary to complete the contract of insurance. As between the agents concerned there is no formal agreement with respect to a division of commissions, unless these transactions amount to a division of them within the purview of the statutes involved as a matter of law.

### Opinion.

[1] The transactions outlined are prohibited by articles 4963 and 4965, R. S. 1911, which, eliminating immaterial portions, read:

Article 4963 (section 5058, R. S. 1925): "Any fire * * * insurance company, legally authorized to do business in this state, is hereby prohibited from authorizing or allowing any person, agent, firm or corporation that is a nonresident of the state of Texas to issue, or cause to be issued, to sign or countersign or to deliver, or cause to be delivered, any policy or policies of insurance on property * * * located in the state of Texas, except through regularly commissioned and licensed agents of such companies in Texas; provided, however, that this law shall not apply to property owned by the railroad companies or other common carriers. * * *"

Article 4965 (section 5060, R. S. 1925): "Any

person, agent, firm or corporation licensed by the commissioner of insurance to act as a fire * * * insurance agent in the state of Texas, is hereby prohibited from paying, directly or indirectly, any commission, brokerage or other valuable consideration on account of any policy or policies covering property * * * in the state of Texas, to any person, persons, agent, firm or corporation that is a nonresident of the state of Texas, or to any person or persons, agent, firm or corporation not duly licensed by the commissioner of insurance and banking of the state of Texas as a fire * * * insurance agent."

These articles are a part of chapter 143, Acts of the 28th Legislature, § 232, passed in 1903, which act repealed and superseded the original act on this subject passed in 1897 (chapter 135, Acts of 1897). Article 4963 appears in both acts. In the original act (section 1) it provided that admitted fire insurance companies—

"shall not make contracts of * * * insurance on property within the borders of this state, or sign or countersign or deliver any policy of insurance, save through regularly commissioned and licensed local agents of such companies."

In the 1903 repealing act (section 1) these companies are—

"prohibited from authorizing or allowing any person, agent, firm or corporation that is a nonresident of the state of Texas to issue or cause to be issued, to sign or countersign, or to deliver or cause to be delivered any policy or policies of insurance on property * * * located in the state of Texas, except through regularly commissioned and licensed agents of such companies in Texas."

It is worthy of note that the captions to the acts are practically identical in so far as they relate to article 4963, and declare in substance that any fire insurance company, licensed to do business in Texas, shall not place any contract or policy of insurance on Texas property, except through licensed Texas agents. This is significant, in view of the change in language above referred to, for it shows a clear intention on the part of the Legislature not to change the law, but to make more definite the things prohibited by the statute. As now written the language simply means that any licensed company is prohibited from writing itself, and from authorizing or allowing any nonresident person, agent, firm, or corporation to issue or cause to be issued, etc., a contract or policy of insurance on property situated in Texas, except through licensed Texas agents. The article as now written not only prohibits the actual physical issuance, signing, etc., of a policy on Texas property as was prohibited by the original act, except through licensed Texas agents, but goes further and prohibits the causing to be issued, etc., any policy on Texas property, except through licensed Texas agents.

Nonresident persons, agents firms, brokers, or corporations are the procuring cause for the issuance and delivery of policies or contracts of insurance where they procure and present applications covering property situated in Texas to foreign companies, licensed to do business in Texas, for which services such companies pay them commissions out of a percentage of the premiums, although the policies are actually physically issued, signed, etc., by licensed Texas agents. To substantiate this proposition we only have to refer to the appellees' argument that, without the services of these nonresident agents and brokers as outlined, the insurance business here involved would be totally and wholly lost to them. Most certainly they cause to be issued, delivered, etc., the contracts or policies of insurance, when without their services the contract would never be made nor the policy issued, which is the specific thing prohibited by the statute.

Since the statute prohibits these companies from issuing or causing to be issued, etc., any policy of insurance on Texas property through nonresident persons or agents, it follows as a matter of course that they are also prohibited from paying them commissions for procuring and causing to be issued any policy of insurance on Texas property. Without doubt the inhibition of the act also includes the inhibition of payment for the act. So, in view of the transactions outlined and of our interpretation of article 4963, we must conclude that the appellee companies are guilty of violating it when they cause to be issued and delivered policies of insurance through nonresident agents or brokers to whom they unlawfully pay commissions for performing the prohibited acts.

[2] The transactions outlined are also tantamount to an indirect payment of commissions by licensed Texas agents to nonresident persons, agents, firms, or corporations, which is prohibited by article 4965. This article had no counterpart in the original act. It is also significant to note that it prohibits any licensed Texas agent from directly or indirectly paying a commission or other thing of value to "any person, agent, firm or corporation that is a nonresident" of Texas; while article 4963 prohibits licensed companies from authorizing or allowing "any person, agent, firm or corporation that is a nonresident" of Texas to issue or cause to be issued, etc., any policy of insurance on Texas property. It is therefore plain that neither a licensed company nor a licensed Texas agent can pay any commission or commissions or other things of value to any nonresident person, agent, firm, or corporation, in connection with writing insurance on property situated in Texas, for services ordinarily performed by an insurance agent in issuing or causing to be issued, etc., a policy covering Texas property. The purpose of the Legislature was to confine the writing of insurance by

foreign insurance corporations, admitted to do business in this state, through licensed Texas agents, so that the agents might be protected in their commissions, and that the state might be protected in its taxes derived from gross receipts on premiums paid on Texas property, and also from occupation taxes paid at the time of the passage of the act by licensed insurance agents. See Franklin Ins. Co. v. Hall, Com., 247 S. W. 822, 112 Tex. 334–339.

[3] It occurs to us that if by these two articles it was intended to prohibit licensed Texas agents and licensed companies from paying commissions to nonresident persons, agents, firms, or corporations for services ordinarily rendered in the matter of issuing or delivering, or causing to be issued and delivered, any policy on property situated in Texas, then it is also reasonably clear that the Legislature intended that licensed Texas agents shall receive for the services they must necessarily render under the statutes all compensation paid, and that may be included in the term "commissions," as that term is applied by usage of trade to the business of insurance agents. It is true that the statutes do not by specific language attempt to fix the amount of compensation or commission to be paid Texas agents for their statutory services, other than to prohibit both Texas agents and licensed companies from paying to nonresident persons or agents what is ordinarily included in the term "commissions."

When used in commercial law—

"The word commission has a well known and definite signification, meaning a percentage on price or value; * * * the recompense or reward of an agent, factor, broker, or bailee, when the same is calculated as a percentage on the amount of the transactions or on the profit to the principal." 12 C. J. 144, and cases cited, notes 85, 86, 88.

The authority, 2 Words and Phrases, First Series, p. 1303, defines the word "commission" as follows:

" 'Commission' legally imports a sum allowed as compensation to a servant, factor, or agent, who manages the affairs of others, in recompense for his services. The right to such allowance may either be the subject of a special contract or it may rest on implied contract to pay quantum meruit. Ralston v. Kohl's Adm'r, 30 Ohio St. 92, 98."

Usages of trade in a particular business in which an agent is engaged often regulate the amount of commissions, in absence of a special agreement. 1 Bouvier's Law Dictionary, 341. The statutes in question give no special meaning to the word "commission," but use it in the same sense it is used in commercial law. So we must conclude that Texas agents who accept smaller commissions on policies they issue and deliver under this arrangement must necessarily know, acquiesce in, and agree to their licensed companies paying the balance of the commissions that they ordinarily collect for issuing and delivering policies to some nonresident person, agent, firm, or corporation, which is prohibited by the statutes.

The appellee companies in effect recognize this to be the correct interpretation of the statutes; but seek to evade them by the happy expedient that they issue two separate and distinct classes of policies of insurance on property situated in Texas. One class are policies issued under the arrangement outlined in this case; while the other class are policies issued on business procured by the Texas agents within this state and with reference to which Texas agents perform all the duties necessary to complete the contract of insurance. The trouble with the contention is that the statutes do not recognize the two classes of policies insisted upon, and we submit that, if the Legislature had intended to recognize the distinction, it would have so provided.

[4] The constitutional questions raised are immaterial in this proceeding. The only effect the commissioner's order here sought to be enjoined will have upon appellees, according to their allegations, is that they will be deprived in the future of large revenues from commissions and premiums on insurance policies issued under the arrangements outlined, and which had heretofore been issued with the consent of the state department of insurance. The order merely threatens to revoke or not renew the license of any Texas agent or foreign corporation guilty of violating the statutes discussed by the authority given in article 4966, R. S. 1911, to do so. No fines or contractual obligations are involved. It is too well settled in Texas to necessitate discussion that the license of a foreign corporation to do business in Texas might be revoked for violation of a statute, although the statute should be held to be void upon the constitutional grounds here urged. Waters-Pierce Oil Co. v. State, 20 S. Ct. 518, 177 U. S. 28, 44 L. Ed. 657; State v. Compress Co., 69 S. W. 58, 95 Tex. 611, 612. See, also, North River Insurance Co. v. Thomas (Tex. Civ. App.) 264 S. W. 589, and cases there cited.

We reverse the judgment of the trial court, and here render judgment dissolving the injunction granted, and deny it in all things.

Reversed and rendered.