**GULF UNION OIL CO. v. ISBELL et al.**

No. 9648.

Court of Civil Appeals of Texas. Austin.

Oct. 15, 1947.

Rehearing Denied Oct. 29, 1947.

106

Cole, Patterson, Cole & McDaniel, Bennett B. Patterson and Joseph Kircheimer, all of Houston, for appellant.

Price Daniel, Atty. Gen., and W. V. Geppert and C. K. Richards, Asst. Attys. Gen., for appellees.

McCLENDON, Chief Justice.

Suit by Gulf (Gulf Union Oil Company) against the Officials (Secretary of State, Attorney General, and State Treasurer), brought under Art. 7057b, Vernon's Ann. Civ. St., to recover $476.50 demanded by the Secretary of State as a condition precedent to revival of the Gulf's theretofore forfeited right to do business in Texas, and paid by the Gulf into the suspense account of the State Treasury under protest.

The Gulf, a Texas corporation, was chartered in 1928 and paid all its franchise taxes up to the year 1936. It paid no franchise taxes thereafter, and its right to do business in Texas was forfeited by endorsement to that effect on the books of the Secretary of State on July 2, 1936. It sought to revive its right to do business in 1946, and paid all taxes and penalties for the years 1936 to 1946, inclusive, the

$476.50, under protest as stated. This sum represented 5% per month upon the 1936 tax from the date of forfeiture to date of payment, and 5% per month on the tax for each subsequent year from date of delinquency to date of payment. The trial was to the court; the judgment denied recovery; and the Gulf has appealed.

Other than whether there was an adequate showing of an effective forfeiture (a question later discussed), the questions presented by the appeal relate to a proper construction of Art. 7092, R.C.S. of 1925, which reads: "Art. 7092. 7400 Notice of forfeiture. The Secretary of State, shall during the month of May of each year, notify each domestic and foreign corporation which may be or become subject to a franchise tax under any law of this State, which has failed to pay such franchise tax on or before the first day of May, that unless such overdue tax together with said penalty thereon shall be paid on or before the first day of July next following, the right of such corporation to do business in this State will be forfeited without judicial ascertainment. Such notice may be either written or printed and shall be verified by the seal of the office of the Secretary of State, and shall be addressed to such corporation and mailed to the postoffice named in its articles of incorporation as its principal place of business, or to any other known place of business of such corporation. A record of the date of mailing such notice shall be kept by the Secretary of State. Such notice and record thereof shall constitute legal and sufficient notice thereof for all the purposes of this chapter. Any corporation whose right to do business may have been forfeited, as provided in this chapter, shall be relieved from such forfeiture by paying to the Secretary of State any time within six months after such forfeiture the full amount of the franchise tax and penalty due by it, together with an additional amount of five per cent of such tax for each month, or fractional part of a month, which shall elapse after such forfeiture; provided, that such amount shall in no case be less than five dollars. When such tax and all penalties shall be fully paid to the Secretary of State, he shall revive the

right of the corporation to do business within this State by cancelling the words, 'right to do business forfeited,' upon his record and endorsing thereon the word, 'revived,' and the date of such revival. If any domestic corporation whose right to do business within this State shall hereafter be forfeited under the provisions of this chapter shall fail to pay the Secretary of State, on or before the first day of January next following the *revival,* the amounts necessary to entitle it to have its right to do business revived under the provisions of this chapter, such failure shall constitute sufficient ground for the forfeiture, by judgment of any court of competent jurisdiction, of the charter of such domestic corporation." (Italics added.)

■ This Article was originally passed in 1907 as Sec. 9 of H.B. 10, Chap. XXIII, p. 502, Gen.Laws, 30th Leg. In the original act on file in the Secretary of State's office, in lieu of the above italicized word "revival" is the word "several." This change first appears in the official publication of the session laws of 1907; and manifestly was an error in copying. The change was carried forward in the codifications of 1911, Art. 7400, and 1925. With this exception there has been no change in wording from that of the original act of 1907. There was, however, one change in punctuation. The comma after the word "revival" first appears in the 1911 codification. The Gulf lays a great deal of stress upon these changes. We think the last sentence of the Article in which these changes appear, is sufficiently clear; and that these changes are void of any significance in so far as concerns the issues before us. This matter will therefore not be further noted.

By agreed stipulation there have been three different "executive or departmental constructions" of the 5% per month provision, as follows:

1. Up to the year 1924, the 5% was computed only upon the tax due at the time of the forfeiture for a period of not exceeding six months from the date of forfeiture.

2. For the period 1924 to 1933, both inclusive, the computation was only upon the tax due at the date of forfeiture but for the entire period from the date of forfeiture to date of payment.

3. From 1934 on, in addition to the amount under computation 2 above, there was added 5% per month upon the taxes for subsequent years from the respective dates of delinquency to the date of payment.

The sum paid under protest was based on computation 3. The Gulf contends for computation 1, or, in the alternative, for computation 2. We have reached the conclusion that computation 1 should be applied; which we base upon the following considerations.

■ While there have been several decisions construing some of the provisions of the Article, the specific questions at bar are of first impression. The forfeiture by the Secretary of State is only of the corporate right to do business in Texas, carrying with it deprivation of the right to bring and defend suits in Texas courts. Specifically, the Article gives the right of revival only for a period of six months after the forfeiture by paying the tax, penalties and the 5% per month or fraction thereof. At the end of this six-month period, absent such revival, the State is given the right to forfeit the corporate charter by judicial proceedings. The Article is silent as to any subsequent right of revival, or the accrual of (1) any further 5% per month on the original tax, (2) any taxes for subsequent years, or (3) any 5% per month thereon.

In Federal Crude Oil Co. v. Yount–Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56, it was held that the right of revival was not limited to the six-month statutory period, but that the corporation "may by the payment of its delinquent taxes and penalties at any time before the State has instituted proceedings to forfeit its charter, receive from the Secretary of State a revival of its right to do business in the State, and the privilege of suing in the courts." (Quotation from the syllabus.) Among the grounds upon which this holding was rested were departmental construction and re-en-

actment of the statute in the 1925 codification which presumed legislative knowledge of this departmental construction.

Ross Amigos Oil Co. v. State, 134 Tex. 626, 138 S.W.2d 798, was a suit by the State against a domestic corporation and its directors, to recover franchise taxes for the period during which its right to do business was forfeited up to the time of its voluntary dissolution by consent of its stockholders. Judgment for the State was affirmed upon the holding (quoting from the syllabus): "Where a corporation continues to exercise all the benefits and privileges conferred upon a chartered corporation except to sue and defend in the court of the State, after its right to do business has been forfeited, carries on its business, retains the profits derived therefrom, and up to the time of its dissolution acted as though it had paid its franchise tax, is liable for such franchise tax during such period."

In Federal Crude Oil Co. v. State, Tex. Civ.App., 169 S.W.2d 283, error refused by Texas Supreme Court and certiorari denied by Federal Supreme Court, 320 U.S. 758, 759, 64 S.Ct. 66, 88 L.Ed. 452, it was held that the corporation was liable for the tax even though it transacted no business during the time its right to do so was forfeited.

As stated, the questions at bar were neither raised nor discussed in any of these cases.

"The rule that where a statute is of doubtful meaning departmental construction may be resorted to in arriving at its proper interpretation is one of long standing. See State v. Texas M. L. Ins. Co., Tex.Civ.App., 51 S.W.2d 405. This rule is of especial force when applied to revenue measures; for, as said in Franklin F. I. Co. v. Hall, 112 Tex. 332, 247 S.W. 822, 823: 'The acquiescence of the Legislature in the departmental construction has not been merely a passive one, for the reason that the fees authorized by the act are a source of revenue, the consideration of which is one of the primary duties of the Legislature.' See also Clark v. Atlantic Pipe Line Co., Tex.Civ.App., 134 S.W.2d 322, error refused; Flowers v. Pan Ameri-

can, Tex.Civ.App., 154 S.W.2d 982, error refused; Crane v. Mann, 162 S.W.2d 117, error refused; Flowers v. Texas Mexican R. Co., Tex.Civ.App., 174 S.W.2d 70; 39 Tex.Jur., pp. 234-238, §§ 125, 126." Lockhart v. American United Life Ins. Co., Tex.Civ.App., 181 S.W.2d 607, 612, error refused.

■ Independently of departmental construction there is scant, if any, basis for computation 3. The only language of the Article imposing the monthly 5% is that which prescribes that the corporation "shall be relieved from such forfeiture by paying * * * any time within six months after such forfeiture the full amount of the franchise tax and penalty due by it, together with an additional amount of five per cent of such tax for each month, or fractional part of a month, which shall elapse after such forfeiture." (In no case less than $5.) Manifestly this language can only apply to "such tax" as was "due by it" at the time of the forfeiture and for a period to begin upon the date of the forfeiture. It is only by a strained analogical construction that this language can be held to apply to any thing but the taxes due at the date of forfeiture. Such construction could only be predicated upon a presumed legislative intent, not implicit in the language it employed; and in effect would amount to judicial legislation.

But even were the language of doubtful or ambiguous import in this regard, we have an admitted departmental construction —that of the Secretary of State, legally charged with the duty of administering the statute, and computing the sums due thereunder—for an unbroken period of 27 years beginning with the inception of the Article. Moreover the Article has been re-enacted twice during that period, 1911 and 1925, without change in wording. To quote from the Yount-Lee case, above [122 Tex. 21, 52 S.W.2d 62]: "Where the officers of the state government, during a long period of years, have construed a statute of doubtful import and the same is later re-enacted by the Legislature in substantially the same form, it will be presumed that the law making body knew of the construction placed upon its language by such

officers, and that, if it was not satisfied that its intention had been rightly interpreted, it would have so changed the verbiage of the act as to have shown clearly a contrary intention. Houston & T. C. R. Co. v. State of Texas, 95 Tex. [507], 521, 68 S.W. 777; Galveston, H. & S. A. Ry. Co. v. State, 81 Tex. [572], 602, 17 S.W. 67; Stephens County v. Hefner, 118 Tex. 397, 16 S.W.2d 804."

■ This departmental construction, extending over so many years, and thus crystallized by legislative sanction, should not be overturned by mere change of view in a departmental ruling some 10 years after the last legislative reenactment.

■ As to computation 2: There was an unbroken departmental construction to the contrary for 17 years (1907-1924). During this period occurred the 1911 re-enactment. The change in construction from computation 1 to 2, did not occur until 1924. The re-enactment of 1925 was during the regular session of the legislature which adjourned March 19. It certainly could not reasonably be presumed that the legislature had in mind this change in ruling of 17 years standing which had just taken place in the preceding year. The presumption should be, we think, that the legislature had in mind the former and not the latter ruling. Especially so, in view of the 1911 re-enactment.

■ There is another ground upon which this view should be adopted, aside from any departmental construction. The Article is a revenue measure and the monthly 5% is a penalty for non-payment of the tax and as such it is part of the tax. The Officials contend that it is a reinstatement fee and not a penalty. It is not so denominated in the Article, and does not partake of the nature of a fee for an official act or service. No basis is suggested for doubling the amount of such fee each month or fraction thereof. The time for performing such act or service would not appear to warrant such increase. It is clearly not interest, the exorbitant and usurious rate would preclude that view. The monthly 5% is manifestly an enforcement measure; the purpose being to encourage speedy payment of the State's revenues. As such, and being a part of and incident to a tax, the rule of strict construction requires that every reasonable doubt as to its proper construction should be resolved in favor of the taxpayer. This rule is elementary.

■ The Gulf further contends that to give the provision the construction urged by the Officials would render it violative of Art. I, Sec. 13, Texas Constitution, Vernon's Ann.St.Const., as being an "excessive fine." It will be observed that to continue the monthly 5% beyond the first six months would enhance the amount of the additional exaction by 60 per cent per annum of the total amount of the tax. Such construction would at least render the provision of doubtful validity—a construction which should not be given it if fairly susceptible of one which would relieve such doubt. See 39 Tex.Jur. p. 219 et seq.

The points urged regarding invalidity of the forfeiture are substantially these:

1. The Secretary of State did not keep a record of date of mailing the forfeiture notice.

2. Entry of the forfeiture was illegal because not made personally by the Secretary of State or an Assistant Secretary of State.

■ The Ledger Sheet of the Franchise Tax Division of the Secretary of State's Office under "Name and Address Gulf Union Oil Company 810 Second National Bank Bldg Houston Texas," bears the stamped notation, "Right to do business forfeited Jul 2 1936." The record entitled "State of Texas Delinquent Tax Notice," has a stamped endorsement: "No report filed Enclosed blank must be completed and filed and all sums due thereunder must be paid on or before July 1 next in order to avoid forfeiture and suit as set out below." The copy of notice below was addressed as in the Ledger above, was dated May 29, 1936, and stated inter alia: "Unless all franchise taxes and penalties due are paid on or before July 1, next, the right to do business of your corporation will be forfeited without judicial ascertainment as required by Article 7092 R.S. 1925." It

bore the stenciled signature of the then Secretary of State.

This being an official record of the office of the Secretary of State, kept in accordance with law, we think it sufficiently showed full compliance with the statute regarding forfeiture. The fact that the record was not personally made by the Secretary of State or an Assistant Secretary of State, we regard as wholly immaterial. It was not required that these records or the endorsements thereon be made by the Secretary or an Assistant in person. Such was the holding of this court, Associate Justice Jenkins writing, in 1918 in Texas Packing Co. v. St. Louis Southwestern R. Co., Tex.Civ.App., 204 S.W. 120, reversed on another ground, Tex.Com.App., 227 S.W. 1095, a holding which does not appear ever to have been questioned.

The trial court's judgment is reversed and the cause is remanded with instructions to render judgment in accordance with computation 1. All costs are assessed against the Officials in their official capacity.

Reversed and remanded with instructions.